[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 23.]

THE STATE EX REL. PEPSI-COLA GENERAL BOTTLERS, INC., APPELLANT, *v.*
INDUSTRIAL COMMISSION OF OHIO; WOODBY, APPELLEE.

[Cite as *State ex rel. Pepsi-Cola Gen. Bottlers, Inc. v. Indus. Comm.*,
2000-Ohio-263.]

*Workers' compensation—Application for temporary total disability
compensation—Industrial Commission does not abuse its discretion in
awarding temporary total disability compensation when the order is based
on "some evidence."*

(No. 98-924—Submitted November 2, 1999—Decided February 16, 2000.)

APPEAL from the Court of Appeals for Franklin County, No. 97APD04-573.

———————————

{¶ 1} Kenneth W. Woodby, appellee, was injured at work on October 3, 1995, and a workers' compensation claim was allowed for "sprain lumbar and sacroiliac." He received temporary total disability compensation for two to three weeks thereafter, based on reports from his attending chiropractor, David M. Booth.

{¶ 2} Appellee returned to restricted work for his employer, Pepsi-Cola General Bottlers, Inc. ("Pepsi"). However, Woodby was once again placed on temporary total disability compensation on December 4, 1995. Thereafter, Woodby was examined at Dr. Booth's request by Dr. Robert A. Dixon, a neurosurgeon, on March 5, 1996. In his report, Dr. Dixon noted that there was "nothing I can offer [Woodby] from a neurosurgical perspective," and that Woodby should undergo a functional capacity evaluation.

{¶ 3} Two days later, on March 7, 1996, Woodby returned to Dr. Booth for evaluation and treatment. Dr. Booth's office notes on that date state the following:

"Additional treatment plan recommendations: It is my professional opinion that the patient has reached MMI [maximum medical improvement] at this time;

and due to his progress in this examination I feel that he should possibly be able to return to work in the very near future. We have not yet received Dr. Dixon's consultation report, but it is my understanding * * * that there is no surgical intervention needed at this time. I would like to have a functional compacity [*sic*] evaluation performed as soon as possible at Concord[e Therapy Group] prior to the patient returning to work. Limitations will be addressed after the evaluation is performed."

{¶ 4} The functional capacity report stated that Woodby could sit for two hours at a time and stand thirty minutes at a time. Lifting was limited to no more than twenty pounds.

{¶ 5} Pepsi did not have work available within claimant's restrictions. Pepsi offered to pay wage-loss compensation rather than temporary total disability compensation, commencing on March 25, 1996. Woodby, nonetheless, moved the Industrial Commission of Ohio for temporary total disability compensation, submitting a C-84 physician's report supplemental from Dr. Booth. In the C-84 report, Dr. Booth stated that Woodby could not return to his former position of employment. When asked on the form whether claimant had reached maximum medical improvement, Dr. Booth checked neither "Yes" nor "No" in the spaces provided.

{¶ 6} In a subsequent letter written on June 7, 1996 to Woodby's counsel, Dr. Booth wrote, "I did state in my 3-7-96 progress note that I felt that Kenneth had reached MMI.

"The patient was returned to work with restriction on 03-25-96. However, Pepsi-Cola did not have any work for him with these restrictions.

"Kenneth himself talked to BWC and was told that since there was no work available, that we should submit another C-84 and place the patient again on temporary total disability. Therefore, a C-84 was submitted which placed the patient again on temporary total disability until 5-27-96.

"On 5-24-96, we returned the patient to work without any restrictions."

{¶ 7} A District Hearing Officer ("DHO") granted Woodby temporary total disability compensation from March 25, 1996 until his return to work on May 24, 1996. The DHO reviewed Dr. Booth's office notes of 3-7-96 and found that "the maximum medical improvement found by Dr. Booth was conditional in that he had not seen the consultation report and wanted a functional capacity evaluation done. Further, the C-84 of Dr. Booth dated 4-29-96 does not indicate that the claimant is MMI."

{¶ 8} Pepsi filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in awarding temporary total disability compensation. The magistrate agreed, finding a lack of "some evidence" supporting an award. However, the court of appeals declined to follow the magistrate's decision and found that Dr. Booth's MMI assessment was indeed conditional upon the completion of a functional capacity evaluation.

{¶ 9} The cause is now before this court upon an appeal as of right.

———————————

*Mentzer, Vuillemin & Mygrant, Ltd.*, and *Thomas M. McCarty,* for appellant.

*Lonal & McGonegal* and *Terrance J. McGonegal,* for appellee.

———————————

**FRANCIS E. SWEENEY, SR., J.**

{¶ 10} Appellant argues that Dr. Booth's assessment that Woodby had achieved maximum medical improvement was unconditional, and thus, it should not have to pay temporary total disability compensation for the period from March 25, 1996 through May 23, 1996. For the following reasons, we reject appellant's contention and affirm the judgment of the court of appeals.

{¶ 11} Pursuant to R.C. 4123.56, payment of temporary total disability compensation shall not be made when, *inter alia*, the employee has reached

"maximum medical improvement." However, in the past we have held that a treating physician's determination of maximum medical improvement that is contingent upon further evaluation or treatment does not necessarily indicate that the physician believes the employee has reached maximum medical improvement. See *State ex rel. Eberhardt v. Flxible Corp.* (1994), 70 Ohio St.3d 649, 640 N.E.2d 815; *State ex rel. Copeland Corp. v. Indus. Comm.* (1990), 53 Ohio St.3d 238, 559 N.E.2d 1310.

{¶ 12} In *State ex rel. Jeep Corp. v. Indus. Comm.* (1991), 62 Ohio St.3d 64, 577 N.E.2d 1095, the claimant's physician stated that although claimant appeared to have reached "maximum medical recovery," his opinion was dependent "upon the results of the physical capacity evaluation," which may have indicated that the claimant might "benefit from a course of kinesiotherapy." We determined that although the doctor opined that the claimant appeared to have reached maximum medical recovery, the other language in his report "appears to qualify Dr. Riethmiller's initial impression that maximum recovery may have been reached, and may be interpreted as proposing the opposite—that further improvement could not be ruled out." *Id.,* 62 Ohio St.3d at 67, 577 N.E.2d at 1098. Thus, we found that the commission's award of temporary total disability compensation was supported by "some evidence." *Id.*

{¶ 13} In the instant case, although Dr. Booth stated that Woodby had reached maximum medical improvement and could "possibly be able to return to work in the very near future," he went on to state that "I would like to have a functional compacity [*sic*] evaluation performed as soon as possible at Concord[e Therapy Group] prior to the patient returning to work." Based on this, the District Hearing Officer stated that the "maximum medical improvement found by Dr. Booth was conditional in that he had not seen the consultation report [of Dr. Dixon] and wanted a functional capacity evaluation done." Similar to the situation in *Jeep*, Dr. Booth's statement could have been properly interpreted by the Industrial

Commission to indicate Dr. Booth's belief that a functional capacity evaluation would suggest whether further treatment may have been beneficial to Woodby.

{¶ 14} Appellant argues that Dr. Booth's subsequent statement contained in his letter dated June 7, 1996, reaffirmed his opinion that Woodby had reached maximum medical improvement without qualification. However, that statement merely reiterates that Dr. Booth determined that Woodby had reached maximum medical improvement at that time. It does not clarify that his opinion of maximum medical improvement was not contingent upon the completion of a functional capacity evaluation.

{¶ 15} We find that the Industrial Commission's order supporting temporary total disability compensation is based on "some evidence," as set forth in *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936, syllabus. Therefore, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

DOUGLAS, RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and COOK, J., dissent.

_____

**COOK, J., dissenting.**

{¶ 16} Because Dr. Booth's opinion that Woodby had reached MMI was not conditional, I respectfully dissent.

{¶ 17} Unlike the physicians' reports in *Copeland, Jeep,* and *Eberhardt*, Dr. Booth's MMI finding in this case was not conditioned upon further evaluation and treatment; rather, his only condition—completion of a functional equivalency evaluation—related to Woodby's work limitations. Dr. Booth's notations reflect that he was already aware that Dr. Dixon reported no need for surgical intervention.

{¶ 18} Two separate bases exist for terminating TTD compensation: (1) a claimant's ability to return to the former position of employment or to other suitable

employment, and (2) a claimant reaching a level of MMI. Ohio Adm.Code 4121-3-32(B)(1). In *Vulcan Materials Co. v. Indus. Comm.* (1986), 25 Ohio St.3d 31, 33, 25 OBR 26, 27, 494 N.E.2d 1125, 1127, this court held that "in the consideration of the permanency of a disability, the commission need not determine whether the claimant could return to his former position of employment. The commission's designation of a disability as permanent relates solely to the perceived longevity of the condition at issue. It has absolutely no bearing upon the claimant's ability to perform the tasks involved in his former position of employment." Thus, Dr. Booth's conditioning Woodby's return to work on the functional capacity evaluation does not contradict his conclusion that Woodby had reached MMI. Given Dr. Booth's unequivocal opinion that claimant had reached MMI, the DHO's award of TTD for March 25, 1996 to May 23, 1996 is not supported by "some evidence." Accordingly, the Industrial Commission abused its discretion in awarding TTD compensation. I would reverse the judgment of the court of appeals.

MOYER, C.J., concurs in the foregoing dissenting opinion.

_____