DECISION IN MANDAMUS ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Robert Wagner, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate that portion of its order denying temporary total disability compensation for the period January 15 through April 28, 2003, and to enter an amended order granting temporary total disability compensation for that period. *Page 2 
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In it, the magistrate determined the commission improperly applied the principles of State ex rel. Bowie v. GreaterCleveland Regional Transit Auth. (1996), 75 Ohio St.3d 458. Moreover, because the commission's order necessarily determined the credibility of the C-84 supporting the award of temporary total disability compensation, the magistrate concluded this court should issue a full writ of mandamus ordering the commission to award temporary total disability compensation for the period from January 15 through April 28, 2003.
 {¶ 3} The commission filed objections to the magistrate's decision:
 1. The Magistrate erred by finding that there is no evidence to support the commission's determination that Wagner is not disabled (from his position of employment) for the period January 5, 2003 to April 28, 2003. The "Functional Capacity Evaluation," dated April 3, 2003 (Finding of Fact No. 10, Stip. Record 29) ordered by Kimberly Wells, D.C., ("Dr. Wells") Wagner's treating physician, states: "Testing data and close observation indicate the evaluee (Wagner) can perform all of the physical demands of a machinist job." (Italics added.) This fact in the record has never been addressed by the Magistrate.
 2. The Magistrate erred in finding that the denial of temporary total disability ("TTD") benefits "is premised upon a mistake of law." The Commission maintains that State ex rel. Bowie v. Greater Cleveland Regional Transit Authority, (1996) 75 Ohio St.3d 458, applies to a treating physician or ("physician of record") as well as an examining, or non-examining physician.
 3. The Magistrate also erred in conducting a de novo review of the medical evidence in order to provide the rationale for an expert medical opinion that the Staff Hearing Officer ("SHO") and commission found lacking. *Page 3 
 {¶ 4} The commission's objections arise from some basic facts. Relator was injured in the course of his employment on May 2, 2002. Kimberly A. Wells, D.C. examined and treated relator. On January 10, 2003, she requested a neurological consultation which the managed care organization approved. Pursuant to that consultation, on January 29, Dr. Wells requested approval from the managed care organization for a series of three epidural steroid injections; the request was approved, and relator received the first epidural steroid injection on February 25, 2003. Following the second injection on March 19, 2003, Dr. Wells, on March 28, 2003, requested approval for a functional capacity evaluation ("FCE"). The managed care organization approved the request and relator, on April 3, 2003, underwent an FCE. Subsequent to the FCE, Dr. Wells again examined and treated relator on April 29, 2003.
 {¶ 5} On March 3, 2003, Dr. Wells completed a C-84 certifying a period of temporary total disability compensation beginning January 14, 2003 through the estimated return-to-work date of April 7, 2003. Dr. Wells completed another C-84 dated April 18, 2003 extending the certification to an estimated return-to-work date of May 19, 2003. Although the Ohio Bureau of Workers' Compensation granted the temporary total disability compensation beginning January 21, 2003, the employer administratively appealed. A district hearing officer affirmed the bureau's order, but a staff hearing officer on subsequent review refused to grant temporary total disability compensation for the period from January 15, 2003 through April 28, 2003 because the two physicians who certified the period of disability did not see relator during that period.
 {¶ 6} The commission's second objection challenges the magistrate's interpretation and application of Bowie to the facts of this case. For the reasons set forth *Page 4 
in the magistrate's decision, the objection is unpersuasive. As the magistrate noted, "Bowie, in essence, prohibits an examining physician from rendering a disability opinion retrospective of the examination unless the physician follows the Bowie safeguards." (Magistrate's Decision, ¶ 43.) Contrasting the facts of this case with those inBowie, the magistrate noted that "Dr. Wells examined relator both before and after the period at issue, i.e., January 15 through April 28, 2003. Clearly, the commission cannot arbitrarily declare under Bowie that the period at issue is retrospective of the April 29, 2003 examination and ignore that the period at issue is also prospective of the series of examinations ending December 17, 2002." (Magistrate's Decision, ¶ 44.) As the magistrate observed, "the record undisputedly shows that Dr. Wells was informed of relator's treatment during the period at issue because Dr. Wells was actually coordinating the treatment. Thus, even though Bowie does not prohibit Dr. Wells' disability certification, there are additional safeguards present beyond what is normally required for prospective disability opinions." (Magistrate's Decision, ¶ 46.) The commission's second objection is unpersuasive.
 {¶ 7} The commission's first and third objections challenge that aspect of the magistrate's decision determining relator's entitlement to compensation for the period from January 15 through April 28, 2003. The commission contends evidence in the record disputes the C-84s that Dr. Wells and Dr. Lee submitted on behalf of relator for the period at issue. Again, the commission's contentions are unpersuasive.
 {¶ 8} The magistrate did not conduct a de novo review of the evidence. Rather, the magistrate accepted the credibility determinations evident in the staff hearing officer's order and applied them to the period at issue. As the magistrate pointed out, the staff *Page 5 
hearing officer found Dr. Wells' C-84 credible for the period following April 28, 2003. Thus, the credibility of Dr. Wells' C-84 is not the issue. Rather, as the magistrate appropriately concluded, the staff hearing officer apparently deemed the C-84 to be incompetent evidence for the period from January 15 through April 28. Because the evidence is properly considered, and because the staff hearing officer relied on the C-84 and found it credible, the magistrate properly determined the record presented no reason to remand the matter to the commission for further consideration of the requested compensation.
 {¶ 9} Relying on the FCE, the commission contends that because the FCE disputes the C-84 Dr. Wells submitted, the matter should be returned to the commission to weigh the competing evidence and determine relator's entitlement to temporary total disability compensation. Ohio Diagnostic Services evaluated relator on April 3, 2003, and concluded "the evaluee can perform all of the physical demands of a machinist job[,]" the job he held with the employer at the time of his injury. Even if the FCE is not retrospectively applied, it is prospective evidence. In awarding compensation from April 29 forward, the commission necessarily rejected the FCE. Nor can we attribute the award to changed circumstances following the FCE. Although relator underwent surgery after April 3, 2003, the surgery did not occur until July 8, 2003. Accordingly, no credibility determinations remain, and sending this matter back to the commission is unnecessary.
 {¶ 10} Accordingly, the commission's objections are overruled.
 {¶ 11} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law. In accordance with the magistrate's decision, we grant a full writ of mandamus *Page 6 
ordering the Industrial Commission of Ohio to award relator temporary total disability compensation for the period January 15 through April 28, 2003.
Objections overruled; writ granted.
KLATT, J., concurs.
FRENCH, J., concurring in part and dissenting in part.
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 13} In this original action, relator, Robert Wagner, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate that portion of its order that denies temporary total disability ("TTD") compensation for the period January 15 through April 28, 2003, and to enter an amended order granting TTD compensation for that period. *Page 8 
 Findings of Fact:
 {¶ 14} 1. On May 2, 2002, relator sustained an industrial injury while employed as a machinist for respondent Vi-Cas Manufacturing Co. ("employer"), a state-fund employer. The industrial claim is allowed for "contusion scalp (head); herniated disc C4-C6 C5-C6; sprain of neck," and is assigned claim number 02-377834.
 {¶ 15} 2. Beginning September 23, 2002, relator was examined and treated by chiropractor Kimberly A. Wells, D.C.
 {¶ 16} 3. Dr. Wells' office records indicate that relator was frequently treated by Dr. Wells through December 17, 2002.
 {¶ 17} 4. On January 10, 2003, Dr. Wells completed form C-9 "Physician's Request for Medical Service." On the C-9, Dr. Wells requested a neurological consultation for relator. The managed care organization ("MCO") approved the C-9 request on January 15, 2003.
 {¶ 18} 5. Pursuant to Dr. Wells' C-9 request, relator was examined and evaluated on January 23, 2003, by Dr. Ronald D. Fudala for the neurological consultation. Dr. Fudala issued a detailed four-page report which is contained in the stipulated record. In his report, Dr. Fudala recommended that relator undergo a series of epidural steroid injections.
 {¶ 19} 6. On January 29, 2003, citing the neurological consultation, Dr. Wells completed another C-9 requesting MCO approval for a series of three epidural steroid injections. The MCO approved Dr. Wells' C-9 request on February 19, 2003.
 {¶ 20} 7. Relator underwent an initial epidural steroid injection on February 25, 2003, which was performed by C. Duane Bellamy, M.D. *Page 9 
 {¶ 21} 8. On March 19, 2003, Dr. Bellamy performed a second epidural steroid injection and issued a two-page report which is contained in the stipulated record. Dr. Bellamy's report indicates that Dr. Wells is the referring physician. Dr. Bellamy's report also states that the third injection of the series will be performed in three to four weeks if indicated.
 {¶ 22} 9. On March 28, 2003, Dr. Wells completed another C-9 requesting MCO approval for a functional capacity evaluation. The MCO approved Dr. Wells' C-9.
 {¶ 23} 10. On April 3, 2003, relator underwent a functional capacity evaluation at Ohio Diagnostic Services located at West Chester, Ohio. Ohio Diagnostic Services issued a detailed 15-page report which is contained in the stipulated record.
 {¶ 24} 11. Dr. Wells' office records indicate that relator visited on April 29, 2003, and was examined and treated by Dr. Wells. Dr. Wells' office notes also indicate that relator was not actually seen by Dr. Wells since the December 17, 2002 office visit even though Dr. Wells was actively involved in coordinating relator's care during that time.
 {¶ 25} 12. Earlier, on March 3, 2003, Dr. Wells completed a C-84 on which she certified a period of TTD beginning January 14, 2003 through an estimated return-to-work date of April 7, 2003. On another C-84 dated April 18, 2003, Dr. Wells extended the TTD certification to an estimated return-to-work date of May 19, 2003.
 {¶ 26} 13. On March 18, 2003, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order granting TTD compensation beginning January 21, 2003, based upon Dr. Wells' C-84 and a file review performed by Dr. Daniel Franklin on March 6, 2003.
 {¶ 27} 14. The employer administratively appealed the bureau's order. *Page 10 
 {¶ 28} 15. Following a May 13, 2003 hearing, a district hearing officer ("DHO") issued an order affirming the bureau's order. The DHO's order states:
 The District Hearing Officer orders temporary total disability compensation paid from 01/21/2003 and to continue based upon medical evidence of the injured worker's inability to perform his prior job due to this claim. The District Hearing Officer finds persuasive evidence from injured worker's testimony and Dr. Wells and Dr. Fudala that injured worker's increased severe neck pain and headaches prevents him from doing his regular job in January.
 * * * This order is based on the reports of Dr. Fudala dated 01/23/2003, FCE dated 04/03/2003, Dr. Bellany [sic] dated 03/19/2003 and Dr. Wells.
 {¶ 29} 16. The employer administratively appealed the DHO's order of May 13, 2003.
 {¶ 30} 17. On a C-84 dated May 30, 2003, C.T. Lee, M.D., certified a period of TTD from January 23, 2003 to an estimated return-to-work date of August 4, 2003. On the C-84, Dr. Lee states that relator was awaiting approval for cervical surgery. Dr. Lee listed May 21, 2003 as the date of last examination or treatment.
 {¶ 31} 18. On July 8, 2003, according to his operative report, Dr. Lee performed an "anterior cervical discectomy and fusion, C4-5, with BAK instrumentation, arthrodesis, fluoroscope."
 {¶ 32} 19. Following an August 7, 2003 hearing, a staff hearing officer ("SHO") issued an order that vacates the DHO's order of May 13, 2003. The SHO's order states:
 The C-84 Request for Temporary Total Disability Compensation, filed 03/03/2003, is granted to the extent of this order. *Page 11 
 The Staff Hearing Officer finds that from 04/29/2003 through 06/02/2003 the injured worker was not able to return to and perform the duties of his former position of employment due to the conditions that are recognized in this claim.
 Therefore, temporary total disability compensation is to be paid for said period less any sickness and accident benefits that were paid during the same period.
 Payment of temporary total disability compensation may continue upon submission of medical evidence documenting the injured worker's continued inability to return to work at his former position of employment due to the conditions that are recognized in this claim.
 The Staff Hearing Officer orders that the C-84 be denied to the extent that it requests the payment of temporary total disability compensation from 01/15/2003 through 04/28/2003.
 The Staff Hearing Officer finds that the injured worker was not seen by Dr. Wells or Dr. Lee during this period. Therefore, neither Dr. Wells nor Dr. Lee is able to certify temporary total disability compensation from 01/15/2003 through 04/28/2003.
 This order is based upon the C-84's from Dr. Wells and Dr. Lee, and the office records of Dr. Wells.
 {¶ 33} 20. On August 13, 2003, Dr. Wells wrote a letter to relator's counsel. The concluding paragraph of that letter states in part:
 * * * Yes, Mr. Wagner was not in direct physical care in our office from 12/18/03 [sic] to 4/28/03. However, as addressed before, due to the plateau of benefit [he] continued with outside management for resolution of his work injury. Our office completely oversighted the coordination of care until Mr. Wagner was taken for surgery. We had consistent verbal and physical contact with the patient at that time. Mr. Wagner did not just disappear from our care and treatment, and never heard from again. His treatment and care was ongoing throughout the time listed during his disability dates.
 {¶ 34} 21. On October 4, 2003, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of August 7, 2003. *Page 12 
 {¶ 35} 22. On April 28, 2006, relator, Robert Wagner, filed this mandamus action.
Conclusions of Law: {¶ 36} The commission, through its SHO, accepted Dr. Wells' certification of TTD beginning April 29, 2003, which corresponds to the date that Dr. Wells again examined and treated relator following the December 17, 2002 office visit. As the SHO noted, Dr. Wells did not actually see relator between December 17, 2002 and April 29, 2003. Because Dr. Wells did not see (examine, or treat) relator from December 17, 2002 to April 28, 2003, the SHO held that Dr. Wells is not "able" to certify TTD for the period January 15 through April 28, 2003.
 {¶ 37} While the SHO cites to no authority to support her holding that Dr. Wells is not "able" to certify TTD for the period January 15 through April 28, 2003, the holding strongly suggests a misapplication and misunderstanding of the legal principles set forth in State ex rel.Bowie v. Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 458.
 {¶ 38} In Bowie, the commission denied the claimant's request for TTD compensation based in part on a report from Dr. Katz who examined the claimant on July 12, 1990, almost seven months after the industrial injury. In his report, Dr. Katz opined that the claimant "should [not] have been out of work at any time after" the date of injury. Id. at 459. Dr. Katz's retrospective opinion was based upon emergency room records on the date of injury and his examination of the claimant.
 {¶ 39} Concerned that Dr. Katz had not reviewed the reports of the claimant's treating chiropractor, Dr. McFadden, the Bowie court, at 460, wrote: *Page 13 
 * * * In this instance, the conspicuous reference to the emergency room reports coupled with the equally conspicuous lack of reference to Dr. McFadden's reports suggests to us that Dr. Katz may have overlooked the latter.
 {¶ 40} The Bowie court issued a writ of mandamus returning the cause to the commission for its further consideration of the compensation request after removal of Dr. Katz's report from further evidentiary consideration. The Bowie court explains the law that underpins its decision:
 There are parallels between an examining doctor who offers a retroactive opinion and a doctor who renders an opinion as to a claimant's current status without examination. The evidentiary acceptability of the latter is long-settled, having been equated to an expert's response to a hypothetical question. State ex rel. Wallace v. Indus. Comm. (1979), 57 Ohio St.2d 55 * * *; State ex rel. Hughes v. Goodyear Tire Rubber Co. (1986), 26 Ohio St.3d 71 * * *; State ex rel. Lampkins v. Dayton Malleable, Inc. (1989), 45 Ohio St.3d 14[.] * * *
 As in the case of a non-examining physician, however, certain safeguards must apply when dealing with a report that is not based on an examination done contemporaneously with the claimed period of disability. We find it imperative, for example, that the doctor review all of the relevant medical evidence generated prior to that time. * * *
Id. at 460.
 {¶ 41} The magistrate finds that the commission's denial of TTD compensation for the period January 15 through April 28, 2003, is premised upon a mistake of law and, therefore, a writ of mandamus must issue, as more fully explained below.
 {¶ 42} As previously noted, Dr. Wells examined and treated relator repeatedly from September 23 through December 17, 2002. Dr. Wells again examined and treated *Page 14 
relator on April 29, 2003, and she was actively involved in coordinating relator's treatment during the hiatus from December 17, 2002 through April 28, 2003.
 {¶ 43} Bowie, in essence, prohibits an examining physician from rendering a disability opinion retrospective of the examination unless the physician follows the Bowie safeguards. Significantly, inBowie, Dr. Katz had only examined the claimant on one occasion, some seven months after the industrial injury. Here, Dr. Wells has examined relator multiple times and has been the treating physician.
 {¶ 44} Here, unlike the situation with Dr. Katz in Bowie, Dr. Wells examined relator both before and after the period at issue, i.e., January 15 through April 28, 2003. Clearly, the commission cannot arbitrarily declare under Bowie that the period at issue is retrospective of the April 29, 2003 examination and ignore that the period at issue is also prospective of the series of examinations ending December 17, 2002.
 {¶ 45} In short, Bowie renders Dr. Wells "able" to certify TTD compensation from January 15 through April 28, 2003, contrary to the holding of the SHO.
 {¶ 46} Moreover, the record undisputedly shows that Dr. Wells was informed of relator's treatment during the period at issue because Dr. Wells was actually coordinating the treatment. Thus, even thoughBowie does not prohibit Dr. Wells' disability certification, there are additional safeguards present beyond what is normally required for prospective disability opinions.
 {¶ 47} Here, the commission accepted Dr. Wells C-84 certification as of April 29, 2003, but refused to accept it for the period prior to April 29, 2003, because of the commission's misunderstanding of the legal principles set forth in Bowie. Thus, the *Page 15 
commission, through its SHO, has already weighed the credibility of Dr. Wells' certification and the SHO's order offers no credibility concerns relating to the C-84.
 {¶ 48} Given that the commission cannot reject Dr. Wells' certification as a matter of law under Bowie, and that the commission has already determined the credibility of the C-84, this court should issue a full writ of mandamus ordering the commission to award TTD compensation for the period January 15 through April 28, 2003. SeeState ex rel. Pleban v. Indus. Comm. (1997), 78 Ohio St.3d 406.
 {¶ 49} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate that portion of its SHO's order of August 7, 2003, that denies TTD compensation for the period January 15 through April 28, 2003, and to enter an amended order that grants TTD compensation for that period.
/s/ Kenneth W. Macke
KENNETH W. MACKE
 MAGISTRATE *Page 1