JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiff Dianna Smigelski (appellant) appeals the court's granting defendant Ben Venue Laboratories, Inc.'s (BV) motion to enforce settlement agreement. After reviewing the facts of the case and pertinent law, we reverse and remand.
 I {¶ 2} On December 5, 2001, appellant was injured while working at BV. Appellant took a leave of absence under BV's short term disability policy, had shoulder surgery, and went through extensive rehabilitation. However, on June 3, 2002, she was not able to return to work, and BV terminated her employment for exhausting the company's disability policy.
 {¶ 3} On June 2, 2004, appellant filed wrongful discharge and sexual harassment claims against BV. On May 4, 2005, the parties reached an oral settlement agreement in which appellant would dismiss the lawsuit and BV would re-employ appellant in a position "for which she is qualified and physically capable of performing ***."
 {¶ 4} There are two written drafts of this settlement agreement. However, neither draft is signed by either party. The first draft was prepared by BV and forwarded to appellant's counsel on May 9, 2005, four days after the settlement was reached. In this draft, appellant may apply for work with BV "at any time following execution of this Agreement, up to December 31, 2005." Paragraph (5) of the draft *Page 4 
also states, "[i]n all events, Smigelski's right to re-employment shall be extinguished as of December 31, 2005 should she not seek and accept employment as detailed above."
 {¶ 5} The second draft, which BV also prepared, was forwarded to appellant's counsel on June 10, 2005. For purposes of the instant case, the difference between this draft and the first draft is that the time frame within which appellant may apply for work changed from December 31, 2005 to the following: "[appellant] may request work with [BV] at any time following the execution of this Agreement, up to February 28, 2006." Paragraph 7 of this draft also states, "[i]n all events, Smigelski's right to re-employment shall be extinguished as of February 28, 2006 should she not seek and accept employment as detailed above."
 {¶ 6} Despite the original and modified dates in the settlement agreement drafts, it is appellant's contention that "[t]he oral settlement agreement did not include any discussion of a specific return to work date." Appellant sought return to work restrictions from her primary care physician, Deborah A. Venesy, M.D. However, her rehabilitation progressed slowly. According to appellant, the slow progress was due, in part, to BV's delays in resolving her workers' compensation claim, which stemmed from the same December 2001 injury. On December 12, 2005, Dr. Venesy requested a "C-9 functional capacity evaluation" (FCE), which is a form used by the Ohio Bureau of Workers' Compensation and the Industrial Commission of Ohio in workers' compensation cases. See, generally, State ex rel. *Page 5 Pepsi-Cola General Bottlers, Inc. v. Industrial Commission of Ohio,88 Ohio St.3d 23, 2000-Ohio-263; State ex rel. Robert Wagner v. Vi-CasManufacturing Co. and Industrial Commission of Ohio, Franklin App. No. 06AP-405, 2007-Ohio-2383.
 {¶ 7} In the meantime, after the FCE request, but before its completion, appellant's counsel sent a letter to BV's counsel dated February 6, 2006. The pertinent parts of that letter are as follows:
 "The purpose of this letter is to finally attempt to conclude the settlement of this matter. My client intends to execute the Settlement Agreement prior to February 28, 2006, as set forth in the last draft of the Settlement Agreement. *** My initial plan was to provide you with specific physical restrictions as indicated by Dr. Venesy so that Ben Venue could offer the appropriate job duties to Ms. Smigelski. Given the denial and dispute over Dr. Venesy's C-9 request, it appears that a workers' compensation hearing will be necessary to resolve these issues. Hopefully this can be accomplished in a relatively short period of time. I now plan to have Ms. Smigelski execute the Settlement Agreement and let the workers' compensation issues proceed through the system."
 {¶ 8} BV initially denied the request for an FCE; however, on May 22, 2006, it approved the FCE, as noted in a Bureau of Workers' Compensation "Agreed Resolution of Disputed Issues." On October 24, 2006, the FCE was completed, and on December 18, 2006, appellant's counsel sent another letter to BV's counsel, enclosing the October 24, 2006 FCE and a December 7, 2006 letter from Dr. Venesy containing recommendations for appellant's physical limitations for work. The letter closes with the following: "Please review these materials and inform me if Ben Venue still is interested in concluding the original settlement agreement." *Page 6 
 {¶ 9} On January 19, 2007, appellant filed a motion to enforce the settlement agreement and on February 9, 2007, BV filed its motion to enforce the settlement agreement. On March 21, 2008, the court held a hearing on the parties' motions, and on March 27, 2008, the court granted BV's motion, finding that appellant failed to comply with the terms of the agreement:
 "There is no dispute that the parties entered into a settlement agreement on 5/5/05 [sic] which gave the plaintiff the right to future employment with the defendant company. The only issue before the court is whether or not a date certain for plaintiff's return to work was an essential term to that agreement and whether there was a meeting of the minds as to that date certain.
 "The court finds that there was a valid enforceable agreement in which time for performance was of the essence. The original draft of the terms of the agreement provided a date certain that plaintiff was to present herself by for employment. Plaintiff never disputed having a cut off date for her return, but merely requested that the date be extended. Defendant agreed to extend the date and modified the agreement. Then when plaintiff again asked for the date to be extended defendant's [sic] denied any further modification. Further, the court finds that reasons for plaintiff's request for extension of the date certain are not material to the agreement in this case."
 {¶ 10} It is from this order that appellant appeals.
 II {¶ 11} Appellant's three assignments of error are interrelated and will be addressed together. They read as follows: "The trial court erred in finding that the parties agreed that time was of the essence as to their settlement agreement, as there was no meeting of the minds regarding time"; "The trial court erred by enforcing an unsigned draft agreement as the enforceable settlement agreement between parties"; and "The trial court erred by *Page 7 
admitting evidence of later memoranda in violation of the parol evidence rule, as the terms of the memoranda contradict the original settlement agreement."
 {¶ 12} Rulings on motions to enforce settlement agreements are questions of contract law, and "Ohio appellate courts must determine whether the trial court's order is based on an erroneous standard or misconstruction of the law. The standard of review is whether or not the trial court erred." Continental W. Condominium Unit Owners Assn. v.Howard E. Ferguson, Inc. (1996), 74 Ohio St.3d 501, 502. "[A] settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and *** such agreements are valid and enforceable by either party." Id. Furthermore, the Ohio Supreme Court has also held that "[i]t is preferable that a settlement be memorialized in writing. However, an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract. Terms of an oral contract may be determined from `words, deeds, acts, and silence of the parties.'" Kostelnik v. Helper, 96 Ohio St.3d 1, 3, 2002-Ohio-2985.
 {¶ 13} In the instant case, the parties do not dispute that they entered into a valid oral contract on May 4, 2005. What they do dispute, however, is the terms of that contract, and specifically, whether a time frame within which appellant would return to work was agreed upon. Appellant argues that no dates were agreed upon. BV, on the other hand, argues that an initial December 21, 2005 return-to-work date was agreed upon, and this was later extended to February 28, 2006. The unsigned settlement agreements show, at best, that negotiations between the parties took *Page 8 
place. See Schalmo Builders, Inc. v. Zama, Cuyahoga App. No. 90782,2008-Ohio-5879 (holding that "[t]he record does not support a finding that there was a meeting of the minds between Schalmo and Zama regarding settlement" where there was an unsigned settlement draft and the defendant testified that she never agreed to settle the case).
 {¶ 14} The record supports the notion that the terms of the settlement agreement were unclear or disputed because appellant did not apply for work before BV's alleged deadline; rather, she continued to pursue the FCE, which a layperson may equate with a generic return to work approval for use in any type of legal action. In addition, the February 6, 2006 correspondence from appellant's counsel to BV's counsel notes that appellant intends to execute the agreement; however, there is no evidence that appellant and BV agreed to any further terms. Rather, the subsequent December 7, 2006 correspondence from appellant's counsel to BV's counsel shows that an agreement had not yet been reached: "Please review these materials and inform me if Ben Venue still is interested in concluding the original settlement agreement." Accordingly, there is insufficient evidence in the record to show that "the parties agreed that time was of the essence as to their settlement agreement," and appellant's first two assignments of error are sustained. Appellant's third assignment of error is rendered moot. See App. R. 12(A)(1)(c).
 {¶ 15} Judgment reversed and remanded to the lower court for further proceedings consistent with this opinion. *Page 9 
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 MARY EILEEN KILBANE, J., and PATRICIA ANN BLACKMON, J., CONCUR *Page 1